**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSE KOHN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CRUNCHLABS LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jesse Kohn ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought on behalf of all persons with Facebook accounts who have subscribed to a subscription box from Defendant CrunchLabs LLC ("Defendant" or "CrunchLabs") and who watched a video on Defendant's website crunchlabs.com (the "Website").

2. Plaintiff brings this action in response to Defendant's practice of knowingly disclosing its users' personally identifiable information ("PII") and video viewing activity to Facebook without their consent.

3. Specifically, the Website uses code called the Facebook Tracking Pixel to track what videos its users watch, and to then send that data to Facebook along with their PII, including their name and email address.

4. The sharing of that data without consent of Plaintiff or other consumers

constitutes a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*. ("VPPA").

## PARTIES

5. Plaintiff Jesse Kohn is, and has been at all relevant times, a resident of Brooklyn, New York and has an intent to remain there, and is therefore a domiciliary of New York. Plaintiff created a Facebook account in approximately 2008. In or about December 2024, Plaintiff purchased a subscription to receive Build Boxes from Defendant. Thereafter, Plaintiff watched one or more Build Box videos on crunchlabs.com. Unbeknownst to Plaintiff, and without his consent, Defendant was sharing Plaintiff's video watching activity and his PII with Facebook through its use of the Facebook Tracking Pixel.

6. Defendant CruchLabs LLC is a Delaware corporation with its principal place of business at 649 Grape Avenue, Sunnyvale, CA 94087. Defendant owns and operates crunchlabs.com, which is used throughout New York and the United States.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States.

8. This Court has personal jurisdiction over Defendant because Defendant disclosed Plaintiff's personally identifiable information in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### I. The VPPA

10. The genesis of the VPPA was President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed Bork's rental history to the Washington City Paper, which then published

it. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

11. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

12. The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

13. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II. Facebook and the Facebook Tracking Pixel

14. Facebook is the largest social networking site on the planet, touting 2.9 billion monthly active users. Facebook describes itself as a "real identity platform,"[1] meaning users are allowed only one account and must share "the name they go by in everyday life."[2] To that end,

---

[1] *Sam Schechner and Jeff Horwitz, How Many Users Does Facebook Have? The Company Struggles to Figure It Out,* WALL. ST. J. (Oct. 21, 2021).
[2] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY,

when creating an account, users must provide their first and last name, along with their birthday and gender.

15. Facebook generates revenue by selling advertising space on its website.

16. Facebook sells advertising space by highlighting its ability to target users.[3] Facebook can target users so effectively because it surveils user activity both on and off its site. This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[4] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[5]

17. Advertisers can also build "Custom Audiences."[6] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website." Advertisers can use a Custom Audience to target existing customers directly, or they can use it to build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[7] Unlike Core Audiences, Custom Audiences require an advertiser to supply the underlying data to

---

https://www.facebook.com/communitystandards/integrity_authenticity.

[3] FACEBOOK,WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[5] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[6] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=24690979533764 94.

[7] FACEBOOK, ABOUT LOOKALIKE AUDIENCES, https://www.facebook.com/business/help/164749007013531?id=401668390442328.

Facebook. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools," which collect and transmit the data automatically. One such Business Tool is the Facebook Tracking Pixel.

18. The Facebook Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[8] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook. Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.

19. Advertisers control what actions—or, as Facebook calls it, "events"—the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views and what buttons a visitor clicks. Advertisers can also configure the Facebook Tracking Pixel to track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases. An advertiser can also create their own tracking parameters by building a "custom event."

20. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

## III. CrunchLabs and the Facebook Tracking Pixel

21. CrunchLabs Build Boxes are monthly shipments containing kits for subscribers to

---

[8] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebookpixel/.
[10] *Id.*
[11] *Id.*

build their own toys, such as a disc launcher or a domino catapult. Along with each box, users are given a secret URL to access a video on the Website:

**What's included**

- A new build-it-yourself toy each and every month
- Unlock a fun and educational 15-30 minute video from Mark Rober with every box to become an engineering superhero

22. These videos are only available to subscribers who pay the $299.40 annual fee. In other words, consumers "subscribe to unlock" these videos:




**Build Box: Product Tutorials**





Build #1 Disc Launcher - Flywheel




Build #2 Coin Spinner - Ratchet

23. Each of the Website's pages hosting these videos contains a Facebook Tracking Pixel that, among other things, transmits PageView data to Facebook, which includes the URL for that video page:




24. The URLs on the Website describe the contents of the videos that they link to. For instance, a video on the science behind how a disc launcher works has the URL https://www.crunchlabs.com/products/disc-launcher.

25. This event data permits an ordinary person to identify what video an individual has watched.

26. In addition, the Website contains the code for at least eight different Facebook cookies:

| Name | Value | Domain |
|---|---|---|
| ar_debug | 1 | .facebook.com |
| ps_l | 1 | .facebook.com |
| xs | 255%3AGP0zajM43N_hbg%3A2%3... | .facebook.com |
| sb | _MvhZhEX7ZeI9FAjN0dTN-n5 | .facebook.com |
| fr | 1Fi3c4omUrlpwg0J3.AWWkyZkG82... | .facebook.com |
| c_user | 679395441 | .facebook.com |
| ps_n | 1 | .facebook.com |
| datr | 9cvhZr5vG9HVMmQsnsSuW_aP | .facebook.com |

27. When someone who is logged into Facebook watches a video on the Website, the Pixel transmits PII from these Facebook cookies to Facebook along with their PageView data. For instance, the c_user cookie contains a visitor's Facebook ID.

28. A Facebook ID is personally identifiable information. Anyone can identify a

Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of facebook.com.

29. The combination of the PageView data and the PII from Facebook's cookies embedded on the Website permits Facebook to see who watched what video.

## CLASS ALLEGATIONS

30. **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States with a Facebook account who subscribed to a subscription box from CrunchLabs LLC and watched a video on crunchlabs.com (the "Class"). Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate.

31. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's subscription boxes and website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

32. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a) whether Defendant collected Plaintiff's and the Class's PII and video viewing activity;

(b) whether Defendant unlawfully disclosed and continues to disclose its users' PII and video viewing activity in violation of the VPPA;

(c) whether Defendant's disclosures were committed knowingly; and

(d) whether Defendant disclosed Plaintiff's and the Class's PII and video viewing activity without consent.

33. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used Defendant's website to watch videos, and had his PII and video viewing activity collected and disclosed by Defendant.

34. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who is highly experienced in complex consumer class action litigation, including litigation concerning the VPPA. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

35. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents

few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710, *et seq.*

36. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

37. Defendant is a "video tape service provider" because it has created, hosted, and delivered dozens of videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

38. Plaintiff and members of the Class are "consumers" because they subscribed to Defendant's subscription boxes, which included access to Defendant's videos. 18 U.S.C. § 2710(a)(1). This makes them "subscribers" and therefore "consumers" under the VPPA.

39. Defendant disclosed to a third party, Facebook, Plaintiff's and Class members' PII. Defendant utilized the Facebook Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like his Facebook ID, along with Plaintiff's event data, including information about the videos he viewed.

40. Plaintiff and the Class members viewed videos on Defendant's website.

41. Defendant knowingly disclosed Plaintiff's PII and video viewing activity because it knowingly installed the Facebook Tracking Pixel on the Website.

42. Plaintiff and class members did not provide Defendant with any form of consent,

written or otherwise, to disclose their PII or video viewing activity to third parties.

43. Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Facebook were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: January 14, 2025

**ARISOHN LLC**

By: */s/ Joshua D. Arisohn*
Joshua D. Arisohn

Joshua D. Arisohn
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorney for Plaintiff*